UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TEODORO J. GONZALEZ, | ) | CASE NO. 4:12 CV0212 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| RODDIE RUSHING, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is *pro se* Petitioner Teodoro J. Gonzalez's above-captioned petition for a writ of habeas corpus pursuant 28 U.S.C. §2241. Gonzalez, who is being held in the Northeast Ohio Correctional Center in Youngstown, Ohio (N.E.O.C.C.), names N.E.O.C.C. Warden Roddie Rushing as Respondent. He asserts his Constitutional rights were violated when he was disciplined at N.E.O.C.C. for a prison infraction. For the reasons set forth below, this action is dismissed.

*Background*

Gonzalez was indicted in 2005 in the United States District Court for the Southern District of Florida on charges that he possessed stolen property. *See United States v. McCullough*, No. 1:05-cr-20946 (S.D. Fl. 2005). After Gonzalez failed to appear for a pretrial

hearing, Judge Federico A. Moreno issued a warrant for his arrest. Gonzalez was captured and returned to Florida where he entered a guilty plea to Count 1 on November 7, 2006. In exchange, the government recommended the dismissal of the remaining Counts.[1] Judge Moreno sentenced Gonzalez to serve 96 months in prison on Count 1, concurrent to a 21 month sentence Judge Moreno imposed based on Gonzalez's prior conviction for failure to appear conviction. *See United States v. Gonzalez*, No. 06cr20103 (S.D. Fl. 2006).[2] Gonzalez's sentence in the 2005 case was affirmed on appeal to the Eleventh Circuit.

Gonzalez was transferred to N.E.O.C.C., on or about August 21, 2009, to serve the remainder of his sentence. On December 24, 2010, he was exiting the chow hall at N.E.O.C.C. when Sgt. Aikens stopped him to perform a pat down body search. When Sgt. Aikens asked Gonzalez what he had in his possession, he replied, " a small jar of cooked beans." (Pet. at 3.) Gonzalez advised the officer that the beans were from the meal that was just served.

That same date, a Special Housing Unit Officer filed an Administrative Detention Order placing Gonzalez in segregation pending an investigation after he was "caught Steeling [sic] cooked ~~rice~~ beans from Chow Hall in a bread bag by Staff." (Pet.'s Ex. A., at 1.) An incident report was immediately filed, charging Gonzalez with stealing in violation of Code 219.

---

[1]Gonzalez's statement that, on November 7, 2006, he "pleaded guilty to Count Two of the Indictment in cause 06cr20946," is erroneous. The case number appears to be a typographical error which should read: *0*5cr20946. Further, the Public Access to Court Electronic Records (PACER) docket for that case reveals Gonzalez was sentenced to serve 96 months for *Count 1*, while Counts 2 and 3 were dismissed. *See Gonzalez*, No. 1:05cr20946, at Doc. No. 63.

[2]The second sentence was imposed for Gonzalez's August 14, 2006 guilty plea to failure to appear in violation of 21 U.S.C. § 3146.F.

Sgt. Aikens reported witnessing Gonzalez place a white container inside a clear bag, which he placed inside the front of his pants while standing at the hot bar in the chow hall. After following Gonzalez outside of the hall, Sgt. Aikens patted him down to discover a jar full of beans.

A hearing was held before the Unit Disciplinary Committee (UDC) on December 28, 2010. Gonzalez stated he did not know why he took the beans, but apologized for the act. Although the incident report states Gonzalez was advised of his rights, he now claims he was not advised of his rights by the UDC Chair. When the UDC Chairman asked him for an explanation of why he was in "possession of cooked beans," he now complains he was never told he had the right to remain silent. As a result, he states his explanation was used against him to impose sanctions. The UDC referred the charges to the Disciplinary Hearing Officer (DHO) and recommended the loss of 27 Good Conduct Time (GCT), 30 days disciplinary segregation, and 60 days loss of commissary privileges.

On December 28, 2010, Case Manager N. Jankowski advised Gonzalez of his rights before the DHO. He also attached a copy of an advisement of rights form to Gonzalez's copy of the incident report. A hearing was held before the DHO on January 5, 2011. At the hearing, Gonzalez was waived his right to staff representation. He admitted the charge was true, stating he took the beans to have a party for a friend in his unit. The DHO asked Gonzalez if he understood his due process rights, to which he replied, "yes." He also read and reviewed Gonzalez's due process rights with him; again, asking if Gonzalez understood his rights. Again, Gonzalez stated "yes." At Gonzalez's request, an interpreter was present and Officer Gonzalez translated for him. While it was explained that he could offer a defense, Gonzalez declined

3

stating he had nothing to present.

The DHO found Gonzalez committed the prohibited act of stealing and adopted the sanctions recommended by the UDC. Gonzalez appealed to the Privatization Management Branch Administrator, arguing the sanctions imposed were excessive and that he only took beans he was served. The appeal was denied. Gonzalez submitted a final appeal to Harrell Watts, Administrator for National Inmate appeals, who denied his request on August 17, 2011.

*Discussion*

Gonzalez now argues he was denied his Fifth Amendment right to due process. Specifically, he asserts that no N.E.O.C.C. staff member ever advised him of his right to remain silent. Without warning him that anything he said could be used against him in a final decision, Gonzalez asserts the BOP violated his Constitutional right to remain silent. Citing a civil rights case in the Northern District of New York, *Dohauser v. Goord*, 314 F. Supp.2d 119, [(N.D.N.Y.2004)],[3] Gonzalez maintains his privilege against self-incrimination was violated. As a result, Gonzalez believes he is entitled to a new disciplinary hearing.

In addition to alleging a violation of his Fifth Amendment rights, Gonzalez asserts his procedural due process rights were violated by the DHO's lack of impartiality.

---

[3]*Donhauser* involved a prisoner's civil rights suit against state prison officials alleging that their denial of good time credits because he refused to provide sexual history, which was required for participation in the sexual offender treatment program, violated his Fifth Amendment right against self-incrimination. The District Court issued preliminary relief enjoining officials from denying good time credits based on his refusal to provide sexual history that would provide information that could be used in a future prosecution,. *Id.* at 314 F.Supp.2d 119, *vacated in part by* 314 F. Supp.2d 139 (N.D. N.Y. Apr 15, 2004) (NO. 01-CV-1535), *order amended by* 317 F. Supp.2d 160 (N.D. N.Y. Apr 23, 2004) (NO. 01-CV-1535), *vacated and remanded by* the Fourth Circuit, in part, on the grounds that further findings in support of preliminary injunction were appropriate, given the district court's lack of clarity. *Donhauser v. Goord*, Nos. 04-2222pr, 04-2490pr, 2006 WL 1525720 (4th Cir. Mar. 22 2006).

Referring to the Code of Federal Regulations, Gonzalez believes any DHO must be independent from the

institution in which he is serving. Citing "[28] C.F.R. §541.2(c)," he asserts the DHO must be an "independent hearing officer" who cannot be a part of the staff at the institution where he serves as DHO. Gonzalez alleges he was denied a fair and impartial hearing because the DHO who heard his case is employed by N.E.O.C.C.

Gonzalez asserts that the sanctions imposed by the DHO constitute cruel and unusual punishment in violation of the Eighth Amendment. Claiming his infraction was simply possession of cooked beans he was served at lunch, Gonzalez maintains the sanctions are far more excessive than necessary. He notes that while a DHO has discretion when imposing sanctions, he believes the DHO willfully chose to sanction him at a higher severity level. He offers no explanation why he believes the DHO decided to allegedly punish him more severely.

Finally, Gonzalez claims the BOP violated his rights under the Equal Protection Clause because another inmate was cited for possessing rice in a bread bag but was not sanctioned at the same level of severity as he. There are no additional details surrounding this allegation, other than the fact that it was another inmate accused of taking food from the chow hall.

*Initial Review*

This matter is before the court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). A court is required to award an application for writ of habeas corpus "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The Sixth Circuit has consistently held that "[t]he burden to show that he is in custody in violation of the Constitution

of the United States is on the prisoner." *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970), *cert. denied* 400 U.S. 906 (1970)(citations omitted). Gonzalez has not met his burden.

*28 U.S.C. § 2241*

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is limited to claims that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that habeas relief is not restricted to requests for immediate release, but extends to claims that a prisoner was unconstitutionally deprived of good-time credits as a result of disciplinary proceedings. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). The *Preiser* court held that the deprivation of good-time credits would have caused the prisoners to be illegally detained longer than they would otherwise be detained if the good-time credits were awarded. *Id*. at 487. Therefore, habeas corpus is Gonzalez's exclusive mode of relief because this situation falls "squarely within [the] traditional scope of habeas corpus." *Id*.

*Fifth Amendment Right*

The Fifth Amendment provides that an individual is not only protected "against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, *where the answers might incriminate him in future criminal proceedings*." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)(emphasis added). The Court has clarified that prison disciplinary hearings are not criminal proceedings, however. *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976). The only time Fifth Amendment protection arises during a disciplinary hearing, however, is when an inmate is compelled in those proceedings to furnish

testimonial evidence that might incriminate him later in a criminal proceeding. *Lefkowitz*, 414 U.S. at 85 (prisoner must be offered "whatever immunity is required to supplant the privilege" and may not be required to "waive such immunity.") That is not at issue in this case.

Nothing that Gonzalez stated to the investigating officer, UDC Chair or DHO was used in a criminal proceeding. Therefore, Gonzalez was not entitled to Fifth Amendment protection during the UDC or DHO hearings.

*Due Process*

When a prisoner faces the loss of good time credits, due process requires the prisoner receive the following hearing rights: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). It appears Gonzalez was afforded all the substantive rights to due process to which he was entitled.

In order to comport with the minimum requirements of procedural due process, the disciplinary findings must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Here, Gonzalez never denied the fact that he took beans from the chow hall. An officer witnessed Gonzalez's attempt to conceal the food and confronted him to produce the evidence. Gonzalez apologized to the DHO for taking the food, explaining he wanted to use it for a party. Therefore, the DHO's factual findings are supported by some evidence in the record. Gonzalez would only be entitled to relief if his conduct does not qualify as stealing.

The word "steal" is defined as "1. To take (personal property) illegally with the intent to keep it unlawfully." BLACK'S LAW DICTIONARY 1267 (9th ed. 2009). Gonzalez admitted he took the beans from the chow hall. Moreover, the reporting officer witnessed Gonzalez attempt to conceal the beans inside of a bag he placed in his pants. While Gonzalez claims the beans were part of the meal served that day, suggesting he may have been entitled to take them, he never explains why he concealed them in his pants. Gonzalez did not remove the beans from the chow in a manner that suggested he was entitled to take them. By definition, he conduct would qualify as stealing.

Gonzalez argues he was denied procedural due process, however, because federal regulations prohibit a DHO from being employed by the prison. This argument is neither supported by the facts or relevant case law. Nothing in the regulations require such a restriction, nor is there a due process requirement that a DHO meet this criteria. The regulations define a DHO as "an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Gonzalez never alleges the DHO was a victim, witness, investigator, or otherwise significantly involved in the incident. The simple fact that a DHO is employed by the prison does not imply his significant involvement in an incident.

*Cruel and Unusual Punishment*

The Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense. *See Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980). The sanctions imposed on Gonzalez conform to the sanctions permitted for the high severity offense he committed; namely, Code 219. *See* 28 C.F.R. § 541.3, Table 1. The loss of

less than one month of good-time, 30 days of disciplinary segregation and commissary privileges is not disproportionate to conduct that the DHO described as creating "conflict between individuals, which interferes with the effective operation of the institution." (Pet. Ex. B at 3.)

Because there is some evidence that Gonzalez committed a violation of Code 219 "Stealing," he cannot argue that the standard punishment for that offense is "grossly disproportionate to his offense." Without any suggestion that the sanctions imposed exceeded the sanction provided, Gonzalez has failed to state an Eighth Amendment violation.

*Equal Protection Violation*

Gonzalez states that another inmate caught with cooked rice in a bag was not sanctioned to the same degree as he. He does not disclose what sanction was imposed against that inmate or with what code violation he was charged. Instead, he asserts his right to Equal Protection under the law was violated because he was "arbitrarily singled out" to receive more severe punishment.

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. When an action does not "interfere with fundamental rights or single out suspect classifications [it] must bear only a rational relationship to a legitimate state interest." *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir.2005) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir.2002)).

The Sixth Circuit has made it clear that "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson*, 411 F.3d at 619; *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998). Thus Gonzalez is not a member of a suspect class.

Moreover, he has not articulated of what fundamental right he was deprived by the Respondent Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th  Cir.2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.' " *Id*. (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th  Cir.2005)). It is Gonzalez's burden to demonstrate the government lacks a rational basis; a burden that may be satisfied either by negating " 'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.' " *Id*. (quoting *Warren*, 411 F.3d at 711).

In response to Gonzalez's appeal, the Privatization Administrator advised that disciplinary matters are private and addressed on a case-by-case basis.  She added that circumstances surrounding one inmate's discipline cannot be compared to the discipline imposed on another inmate since each case stands on its own merits. As a rule, "prison administrators enjoy broad discretion in determining which inmates warrant administrative segregation."*Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)(quotation omitted). Because, by his own admission, Gonzalez believes the sanctions he received were arbitrary he cannot assert the BOP harbored any ill-will or animus toward him.  Therefore, it cannot be said that there are any "relevant differences between [Gonzalez] and other inmates that reasonably might account for their different treatment." *Id*. (citation omitted).

*Conclusion*

The Petition for writ of habeas corpus is **dismissed** pursuant to 28 U.S.C. § 2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Date: May 30, 2012                              /s/ John R. Adams
                                                JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE